Fletcher, J.
This case, which is a suit in equity, was heard on bill and answer.
The plaintiffs set out, in their bill, that they are seized and possessed of certain real estate, water - privileges, and mills, situated on or near Mill river, and that they are, with certain other persons, the owners of and interested in a certain reservoir of water, which reservoir has been created and maintained at great expense for the combined use, benefit, and advantage *49 of the several owners thereof; and that the rights and privileges of the several owners of and persons interested in said reservoir are regulated and determined by a certain written contract, which provides that said reservoir shall be for the use and benefit of their several mills and water privileges situated below the reservoir upon Mill river, and in which the several parties agree to bear their respective portions of the expense of creating and maintaining the reservoir according to their respective number of shares, as fixed and set forth in said contract, which said contract is recorded in the registry of deeds.
The bill further states, that the only beneficial use of the water in the reservoir is to discharge it in proper quantities into Mill river, when wanted for the works and mills on said river, and that the benefits of the contract aforesaid require, that the water should be kept in the reservoir till wanted to supply water in the river.
The bill further statés, that the defendants own no mills, but claim to be the owners of all the shares in the reservoir, not owned by plaintiffs, and claim to own a majority of all said shares, and as such owners of a majority of the shares, they claim a right and threaten to let off and discharge the waters from the reservoir, and allow the same to run to waste, so that the same cannot be used for the benefit of the mills below, for which purpose the reservoir was created, and that in pursuance of such threat the defendants are in fact discharging the water from the reservoir, and allowing the same to run to waste — not because the defendants themselves get, or expect to get any benefit therefrom, but to prevent the accumulation thereof for the use and benefit of the plaintiffs — that the letting off of the water at this time is contrary to the provisions of the contract aforesaid, and rather a damage than a benefit to plaintiffs’ mills; whereas, if the water could be kept back and saved as heretofore, the plaintiffs would receive the usual advantages thereof, without any injury to the defendants, and that the object, for which the reservoir was made and maintained, is thus defeated and wholly lost, and the reservoir thus destroyed. And the plain ■ *50 tiffs pray that the defendants may be restrained from letting off and wasting the water, as aforesaid, and for further relief.
The defendants in their answer admit that some of the plaintiffs, and deny that others, are interested in the mills on Mill river. They admit that the plaintiffs are interested in the reservoir with the defendants in the manner and proportions set out in the contract between the parties, a copy of which contract is annexed and made a part of the answer. The defendants in their answer claim to be the owners of thirty shares in the reservoir, and admit the plaintiffs to be owners of the other fourteen shares, there being forty-four shares in all; and the defendants claim a right to hold and manage their shares in connection with the owners of the other shares according to the terms and provisions of the contract aforesaid, and allege that the plaintiffs own their shares as distinct from, and not as appurtenant to, any mills, but solely under and according to the provisions of said contract, to be held and managed according to the. provisions thereof, by which provisions, the owners of the major part of the shares are to regulate, control, and manage the use of the reservoir and the waters therein. And defendants further say that the letting off of the water, of which the plaintiffs complain, was in pursuance of a vote of the owners of a major part of the shares, and to repair the flume and dam.
But the defendants contend-that they may lawfully draw down the water of the reservoir in such manner and at such times and in such quantities as the owners of the major part of the shares, acting under the provisions of said agreement, shall choose, without being thereby liable to the plaintiffs under the agreement for so doing, or being lawfully subject to be enjoined from so doing, as prayed for in the plaintiffs’ bill.
The defendants in their answer further say they do not deny, that, in letting out said water, they did not regard what might be the effect thereof upon plaintiffs’ mills at some future time, should the water in the stream become insufficient to carry their works, as the defendants claimed and still claim a right in the major part of the proprietors to keep up, or draw down, the waters of the reservoir at pleasure, as against the plaintiffs *51 and those owning less than a major part of the shares, if done, as in this instance, according to the terms of the agreement.
The deeds conveying the lands for the reservoir to the original owners are in the case and have been examined. But the view, which the court have taken of this case, renders it unnecessary to consider several of the questions which were raised and discussed at the bar. The questions whether the shares in the reservior were, originally, technically appurtenant to the mills, and if so appurtenant, whether they have since been separated, and whether the shares originally appurtenant to one mill can be made appurtenant to another mill, and other questions presented by counsel, need not be settled in order to reach a just decision of thé case.
The rights of these parties, in regard to the matters in question, may be determined by a very simple view of their legal relations to each other.
The reservior property is divided into forty-four shares; thirty of these shares are owned by the defendants, and fourteen by the plaintiffs. The plaintiffs in their bill complain of the defendants, in effect, that they are destroying the common property, by letting all the water run off, and run to waste, so that the reservoir will be destroyed and rendered of no use as a reservoir, and that this is in violation of the rights of the plaintiffs, who own mills on the stream below, and want, and have a right to, the water of the reservoir for the use of their mills. But the defendants insist, that they, as owners of the major part of the shares of the reservoir, have a right, if they think proper to do so, to let all the water run off and run to waste, and thus destroy the reservoir and render it of no use, wholly irrespective of the interests of the plaintiffs.
How far these claims of the respective parties are well or ill founded, must be determined by a reference to their legal titles to the property in question, and then- legal relations to each other. Upon examining the legal title to this reservoir, it is quite apparent that it is owned by these parties, plaintiffs and defendants, as tenants in common, the plaintiffs owning fourteen shares and the defendants thirty shares, undivided Looking to the legal title, therefore, the rights and powers of *52 the parties to and over the property are such, and only such as belong to them as tenants in common. These parties are before the court as tenants in common.
In general, equity will not interfere between tenants in common to restrain waste, on the ground that one tenant in common has a right to enjoy as he pleases, and that the party complaining may relieve himself at law by having partition, and the court will not act against the legal title to possession of a tenant in common. The court will, however, restrain a tenant in common in some special cases of wasteland under peculiar circumstances. So also injunctions will be granted in special cases to prevent an inequitable exercise of the legal rights, which every tenant in common possesses; and courts of equity uniformly interfere, when one tenant in common is committing acts, which, if permitted to go on, would amount to a destruction of the property. Courts of equity will not refuse their aid to protect the common estate from total ruin by a tenant in common.
In the present case, the acts of the defendants, of which the plaintiffs complain, if suffered to go on, would directly and inevitably destroy the common property. The reservoir was created for the purpose of containing and holding in reserve a body of water, to be let out for the use of the mills, only at times when there was a deficiency of water in the river, and it is of no use or value, as a reservoir, for any other purpose. To let the water off, therefore, when not wanted, and thus suffer it to run to waste, so that, when wanted for the use of the mills, it is all gone and wasted, is completely to destroy the reservoir, and render it of no use or value to any one.
But the defendants insist that they, by virtue of the origina contract entered into by the parties for constructing and maintaining the reservoir, have a right, being a majority in interest, to let off the water and let it all run to waste, according to their will and pleasure, without any regard to the interests of the minority. This original contract is referred to, and insisted on by both parties, as defining and determining their respective rights. It is annexed to, and makes a part of the defendants’ answer.
*53 It appears that the original parties to this contract were all owners of mills and water privileges on Mill river, and “ associated together to construct and maintain a reservoir, and therein to raise and reserve a head of water, for the use and benefit of their several mills and mill privileges situated below said reservoir upon Mill river, upon the terms and in the manner stipulated in the agreement hereinafter contained.”
The parties then proceed to bind themselves to pay their respective proportions of the expenses, and determine the number of shares, which shall be held by them, respectively. It is then provided, that the construction of the reservoir, the purchase of land, the assignment and payment of damages for flowing, the control, regulation and use, of the water in the reservoir, “ and the times and seasons when, and the quantity, and manner in which, the said water may be drawn off for the use of the parties interested therein, and all other things relating thereto, shall be subject to the will, order and direction of a majority in interest for the time being of the then owners of the reservoir.” In conclusion the contract contains the following clause: “ the right to draw off and exhaust the water from said reservoir, at any and all times, to supply the mills and water privileges below the said reservoir on Mill river, being subject exclusively to the control and direction of a majority in interest of the proprietors for the time being of said reservoir, as hereinbefore provided.”
It is apparent from this agreement, that the parties associated to construct and maintain the reservoir for the use and benefit of their mills and mill privileges on Mill river. This was the avowed and express object of the enterprise. Authority was given to the majority in interest to make directions in regard to the quantity and manner in which the water might be drawn offfor the use of the parties interested therein, and the drawing off and exhausting the water from the reservoir to supply the mills and water privileges on Mill river was made subject exclusively to the control and direction of a majority in interest of the proprietors for the time being of said reservoir.
It is clearly manifest from the whole instrument, that the *54 power and all the. power given to the majority, in regard to drawing off the water, is confined to drawing it off for the use of the mills, for which it was designed. The majority, acting in good faith, and with good discretion, had the power to regulate the use, but they had no power wilfully to destroy the use, of the water. A power in the majority to regulate the use would be a suitable and reasonable power, but a power arbitrarily to destroy the use, wholly regardless of the interests of the minority, would be a most unsuitable and unreasonable power. The right claimed by the defendants to destroy the common property at their arbitrary will and pleasure, wholly regardless of the interests of the plaintiffs, can find no support in reason or law, nor in the contract or agreement upon which the claim is founded.
But the defendants say that they are not owners of any mills, and, of course, have no occasion to use the water for themselves ; that maintaining the reservoir is necessarily attended with expense and trouble; that they are willing that the plaintiffs should use the water for their mills, if they will pay for the same to the defendants a reasonable rent or compensation ; that the Ballous, three of the plaintiffs, have heretofore paid such a rent, but that now all the plaintiffs refuse to pay the defendants any rent or compensation for the use of the water. The defendants thus set forth that they are willing to permit the plaintiffs to use the water, if they will pay to the defendants the compensation required; but they insist that they have a right to let the water run to waste, and thus deprive the plaintiffs of the use of it, they refusing to make the payment demanded.
This is an erroneous view of the rights and obligations of the respective parties. Both parties, as tenants in common, have a right to the use of the water. The defendants may use it or not use it, as they may be disposed, or may have occasion. But whether they are or are not disposed, or have or have not occasion to use it, is wholly immaterial in regard to the rights of the plaintiffs. If the defendants have purchased property for which they have no use, that is wholly their concern. They can have no right to destroy the com* *55 mon property, because they themselves have no occasion to use it, thus acting in utter disregard of the rights and interests of their co-tenants, the plaintiffs. The plaintiffs, as owners as tenants in common, have a right to the use of the water, and this use is not a favor or privilege which the defendants may grant or withhold at their pleasure; but it belongs to the plaintiffs as a matter of legal right, for which they are under no obligation to pay tribute to their co-tenants the defendants. The fact set forth in the answer, that the Ballous, for a time, submitted to the exaction and paid a rent to the defendants, cannot affect the legal rights of the plaintiffs, or authorize the defendants to impose on the plaintiffs a burden to which they are not legally liable.
B. F. Thomas, for the plaintiffs.
E. Washburn, for the defendants.
The result is, that the plaintiffs aré entitled to an injunction, as prayed for, to prevent the waste of the water, but it must not restrain the defendants from letting off the water for the purpose of necessary repairs, or for safety, and to prevent damage, they acting with good faith and with good discretion.